IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 18, 2003

## ALONZO LEONARDO GAYDEN v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Rutherford County**
**No. F-52463     James K. Clayton, Jr., Judge**

---

### No. M2003-00165-CCA-R3-PC - Filed January 22, 2004

---

The petitioner, Alonzo Leonardo Gayden, appeals from the Rutherford County Circuit Court's denying him post-conviction relief from his 2001 conviction for theft of property valued at $1,000 or more, a Class D felony. He contends that he received the ineffective assistance of counsel. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Larry D. Brandon, Murfreesboro, Tennessee, for the appellant, Alonzo Leonardo Gayden.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General, for the appellee, State of Tennessee.

### OPINION

The petitioner was charged with aggravated burglary, forgery, and theft of property valued over $1,000. The proof at his jury trial reflects that in mid-February 2000, the apartment of Timothy and Jennifer Hurst was burglarized. The items taken included a twenty-five-inch RCA color television, a thirteen-inch Sanyo color television, a Sanyo video cassette recorder (VCR), a Memorex VCR, a set of Wilson golf clubs, a Uniden cordless telephone, a Dirt Devil vacuum cleaner, a Gibson guitar with a stand, a microwave oven with a stand, a Black & Decker cordless drill, an opal ring with diamonds, hunting knives, and two boxes of bank account checks. At the time of the burglary, the petitioner lived across the breezeway from the Hursts in the same apartment complex.

Only the guitar and the Memorex VCR were recovered. Mr. Hurst identified the guitar as his, noting the distinctive pick that was stuck in the strings. He also identified the VCR as his, but he admitted that he could not be absolutely sure that it belonged to him. He valued all the stolen

items at approximately $3,000. Similarly, Jennifer Hurst identified the VCR as hers, but she, too, could not be absolutely certain.

Richard Jackson, an owner of a loan company, testified that on February 15, 2000, a person identified as the petitioner pawned a Memorex VCR and a guitar for $100. He said Mr. Hurst later identified these items at his store. Jim Davies, an owner of a gun and pawn shop, testified that on February 15, 2000, he bought a twenty-five-inch RCA television from the petitioner. Scott Saunders, the owner of Roadrunners, a type of pawn shop, testified that he bought a cordless drill and a Sanyo VCR from the petitioner on February 16. James Michael Mullins, an employee at the Red Rose Café, testified that the petitioner was at the shop late one night in February 2000 and presented a check to a co-worker who was not present for the trial. He identified a check dated February 15, 2000, on the Hursts' bank account, but he could not be certain that the petitioner had presented it.

The jury acquitted the petitioner of the aggravated burglary and the forgery charges but convicted him of theft of property valued at $1,000 or more. The record reflects that the parties agreed to a Range I, standard sentence for two years with the petitioner waiving any probation application. No appeal ensued.

At the post-conviction evidentiary hearing, the petitioner and his trial attorney testified.[1] The petitioner complained that his trial attorney never replied to his correspondence. He said the only times he saw his attorney was on the various court dates. He said he told his attorney that he was not guilty and wanted to take an active part in his defense. He claimed, however, that the total time that he spent with his attorney was less than thirty minutes.

The petitioner testified that witnesses from the Red Rose Café gave inconsistent descriptions. He said he told his attorney that the witnesses should be called on his behalf but the attorney "just kind of shrugged." The petitioner admitted, though, that his attorney did a good cross-examination of James Michael Mullins and had "discredited Mr. Mullins pretty good." He said his wife should have testified. He said his attorney told him that his wife would be called but she was not. The petitioner claimed that a witness existed who could prove that he obtained one of the electronic pieces legally.

The petitioner then made various unrelated complaints. He complained that his acquittal of aggravated burglary meant that he should not have been convicted of theft. He asserted that the only items that were identified were not worth more than $500. He also believed that the videotape of the police interrogating him and his wife should have been played to the jury. He acknowledged that he decided not to testify in order to prevent the state's use of his past record, but he said the attorney did not explain to him the significance of unexplained possession of recently stolen property. The

---

[1] The petitioner's brief does not contain any evidence presented at the hearing. It is the duty of the petitioner, as the appellant, to include in his brief a statement of the facts relevant to the issues on appeal with appropriate record references. T.R.A.P. 27(a)(6). Failure to do so works an unnecessary hardship on the appellee and an inconvenience to the court.

petitioner noted that the docket outside the courtroom listed four drug-related misdemeanor charges against him, and he felt positive that jurors had seen them. He also claimed that the trial court's instructions placed too much emphasis on the theft charge and led to his conviction. Finally, the petitioner said that he told his attorney that he wanted to appeal and that he did not recall waiving his right to seek a new trial and right to appeal.

On cross-examination, the petitioner acknowledged that neither his wife, the Red Rose witnesses, nor any of the jurors were present to support his claims. He acknowledged that the state offered to resolve all of his cases with an effective two-year sentence, but he asserted that he did not know he was waiving any appeal.

The petitioner's trial attorney testified that he had been an assistant public defender in Rutherford County for thirteen years. He said he began representing the petitioner when he appeared for arraignment on the charges in Circuit Court. He noted that he did not keep time sheets, and the record reflects that his memory was less than clear regarding certain of the petitioner's claims. He could not dispute the petitioner's claims that he never visited the petitioner in jail and never responded to the petitioner's letters. He said most of the meetings with the petitioner were at the courthouse. He did not recall discussing strategy with the petitioner, although he noted that they went over the discovery materials.

Regarding the other Red Rose Café witnesses, the attorney testified that the state could not locate the person who actually cashed the check for the Café. He said that he was concerned that the other witnesses would be able to identify the petitioner if they were called to testify. He said that his strategy was successful because the jury acquitted the petitioner of the forgery charge. He acknowledged that he and the petitioner discussed calling the petitioner's wife as a witness, but he said that he did not believe she would be a good witness. He said Mrs. Gayden had a history of drug abuse and rehabilitation attempts and gave a statement to the police claiming that she did not know anything about the burglary.

Unfortunately, the trial court failed to make specific findings regarding the proof received at the evidentiary hearing. However, it found that sufficient evidence existed to convict the petitioner of theft and that the petitioner was not prejudiced by his attorney's failure to call witnesses from the Red Rose Café. The trial court dismissed the petitioner's petition, concluding that there was no basis for relief.

Essentially, the petitioner complains about his trial attorney's failure to communicate with him, failure to include him in the defense strategy, and failure to present witnesses at trial. He asserts that the attorney's lack of communication and preparation prejudiced him. The state responds that the attorney met with the petitioner on many occasions at the courthouse, discussed the case with the petitioner, and provided him discovery materials. It asserts that the attorney made tactical decisions regarding not calling the witnesses requested by the defendant. It contends that the petitioner failed to establish that the attorney's representation was below the range of competence

demanded of attorneys in criminal cases and failed to establish any prejudice. We agree with the state.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 159 U.S. App. D.C. 326, 487 F.2d 1197, 1202-04 (D.C. Dir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. See Hellard, 629 S.W.2d at 9; DeCoster, 487 F.2d at 1201. On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

A telling fact supporting the effectiveness of the petitioner's attorney is the petitioner's acquittal on the aggravated burglary and forgery charges. Given the state's lack of the witness who accepted the check at the Red Rose Café, it was a reasonable tactic for the attorney not to call witnesses who might connect the petitioner to the transaction. In any event, the petitioner was acquitted on the forgery charge.

As for the petitioner's wife, nothing in the record indicates that the reasons for the attorney's refusing to use her as a witness were insufficient. In this respect, absent her testifying at the post-conviction hearing, there is no way to assess the claimed importance of her testimony. See Black v. State, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990). Obviously, the same applies relative to the other witnesses that the petitioner wanted to call at his trial.

Generally, the petitioner has failed to show that his attorney's actions or inactions fell below what is demanded of attorneys in criminal cases or to show that he was prejudiced in his case. We conclude that the record justifies the trial court's refusal to grant the petitioner relief. In consideration of the foregoing and the record as a whole, we affirm the trial court.

_____
JOSEPH M. TIPTON, JUDGE